# Illinois Official Reports

## Appellate Court

---

### *People v. Frazier*, 2016 IL App (1st) 140911

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRELL FRAZIER, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-14-0911 |
| Filed | August 15, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-14983; the Hon. James M. Obbish, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Christopher L. Gehrke, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Michael J. Czopkiewicz, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Connors and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a bench trial, defendant Terrell Frazier was convicted of possession of a stolen motor vehicle and sentenced, as a Class X offender, to 6½ years' imprisonment. On appeal, defendant contests the sufficiency of the evidence supporting his conviction, arguing that the evidence failed to show that the motor scooter he possessed qualified as a motor vehicle, that it was stolen, and that he knew it was stolen. We affirm the judgment of the circuit court of Cook County.

¶ 2      At trial, Conrad Hard testified that he owned a 2011 Lingyu 13L150 motor scooter, which was started with a key. He bought the motor scooter from the "Tool Store" in Forestview and registered it with the State of Illinois. The registration form for the scooter, which was entered into evidence, indicated the vehicle identification number (VIN) of the scooter.

¶ 3      On July 22, 2013, Hard parked his motor scooter across the street from his apartment at the corner of North Kedzie Avenue and West Warren Boulevard in Chicago. The following day, he observed that the motor scooter was not where he had parked it and the lock to the motor scooter and its cover were inside his apartment building at the front door. Hard called the police and reported that his motor scooter had been stolen. Hard went to the police station on July 25 and was directed to the motor scooter. The motor scooter appeared different as it was broken and items were missing, including the ignition. He specifically stated that the space where the ignition was supposed to be was "just busted straight down the middle with a big hole where I used to put the key for the ignition." Hard had the key from the stolen motor scooter with him at the police station and used it to open the storage compartment under the seat. Hard did not know defendant and did not give him, or anyone else, permission to take the motor scooter between the last time he saw it on July 22 and when he saw it again at the police station on July 25. Hard stated that the police returned the motor scooter to him, and he was able to drive it home by connecting the wires in such a way that he only needed to press the start button. At the time of trial, Hard still owned and drove the motor scooter.

¶ 4      Officer Sean Flynn testified that he saw defendant talking to another person while sitting on a motorized scooter that had its engine running and was parked on the sidewalk at approximately 1002 North Hamlin Avenue in Chicago on July 25, 2013. Flynn and his partner exited their squad car, noticed that the motorized scooter did not contain a license plate, and asked defendant for his driver's license. Defendant did not have a license, and Flynn detained him. Flynn discovered that defendant's license had been suspended, and when he ran the VIN on the motorized scooter, it came back as stolen. He subsequently learned that the motorized scooter was registered to Conrad Hard. Upon defendant's detention, Flynn noticed that the cylinder for the ignition had been removed and no key was inside as there was no ignition to put it into. Flynn stated that he had seen hundreds of motorized scooters similar to the subject motor scooter and that scooters in good condition are operated with a key. He denied ever seeing a scooter that could be operated by a "push start." No pictures were taken of the damaged scooter.

¶ 5      After the State rested, defendant made a motion for directed finding, arguing that the State failed to prove that he knew the motor scooter was stolen. In denying the motion, the trial court found that the type of damage the motor scooter sustained showed that defendant knew it was stolen.

¶ 6        Defendant, who was on probation for possession of a controlled substance and had previous felony convictions, testified that he was having a conversation with his friend, Raymond Thompson, about Thompson's motor scooter on July 25, 2013. Thompson started the motor scooter by holding the brake and pushing a button. Defendant got on top of the motor scooter and asked Thompson if he could take it on a test drive because he was considering buying it from him. Defendant believed that his driver's license was valid and indicated that he knew he needed a driver's license to operate the motor scooter. The police arrested defendant before he had the chance to drive the motor scooter. Thompson did not tell defendant that the motor scooter was stolen, nor did he see any evidence that it was stolen, particularly where he believed the scooter was a "push start" that did not require a key.

¶ 7        During cross-examination, defendant indicated that the motor scooter could be driven on the street and could reach approximately 40 miles per hour. He did not see the empty space in the motor scooter where a key would have gone and stated that he previously owned a "push start" motor scooter. Defendant denied ever going to school to become a mechanic and never told the police that he went to mechanic school or that he thought the motor scooter was a "push start" based on his auto mechanic training.

¶ 8        Following closing arguments, the trial court found defendant guilty of possession of a stolen motor vehicle. In doing so, the court found that defendant's testimony lacked credibility where he did not inform the police that Thompson owned the motor scooter, and there was no real distinction between this case, where there was a hole where the ignition should have been, and a case where an individual is caught riding in a motor vehicle with a peeled steering column. The court noted that such a condition is a strong indicator that the vehicle was stolen, particularly considering defendant was experienced with motor scooters.

¶ 9        Defendant filed a motion for a new trial, arguing that the State never proved that he had any knowledge that the motor scooter was stolen. The trial court denied the motion, again finding that it was obvious to defendant that the motor scooter he was on was stolen where the entire ignition portion of the vehicle had been ripped apart. The court also rejected defendant's argument that the motor scooter belonged to Thompson as defendant never informed the arresting officers of that alleged fact when it would have been appropriate to do so and could have avoided defendant's subsequent charge.

¶ 10       On appeal, defendant contends that the State failed to provide sufficient evidence to prove him guilty of possession of a stolen vehicle. Specifically, defendant maintains that the evidence was insufficient to prove the three elements of the offense: the motor scooter qualified as a "motor vehicle," the motor scooter defendant possessed was stolen, and defendant had knowledge that it was stolen.

¶ 11       In reviewing a sufficiency of the evidence claim, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. *People v. Davison*, 233 Ill. 2d 30, 43 (2009). A reviewing court will not retry the defendant. *People v. Cox*, 195 Ill. 2d 378, 387 (2001). Instead, it is the responsibility of the trier of fact to assess witness credibility, weigh the evidence and draw reasonable inferences therefrom, and resolve any conflicts in the testimony. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). A defendant's criminal conviction will not be reversed on appeal unless the reviewing court finds that the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 12    To sustain a conviction for possession of a stolen motor vehicle the State must prove beyond a reasonable doubt that (1) the defendant was in possession of a motor vehicle, (2) the vehicle was stolen, and (3) the defendant knew it was stolen. 625 ILCS 5/4-103(a)(1) (West 2012); *Cox*, 195 Ill. 2d 3d at 391.

¶ 13    Defendant first contends that the State failed to prove that the motor scooter was a "motor vehicle" within the meaning of the Illinois Vehicle Code (Code) (625 ILCS 5/1-100 *et seq.* (West 2012)). In particular, defendant asserts that the State failed to show that the motor scooter did not qualify as a low-speed electric or gas bicycle.

¶ 14    Illinois law defines, in relevant part, a motor vehicle as "[e]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overheard trolley wires, but not operated upon rails, except for vehicles moved solely by human power, motorized wheelchairs, low-speed electric bicycles, and low-speed gas bicycles." 625 ILCS 5/1-146 (West 2012). Low-speed electric and gas bicycles are defined as two- or three-wheeled vehicles with fully operable pedals and electric or gas motors of less than one horsepower, whose maximum speed on a paved level surface, when powered solely by such motors while ridden by an operator who weighs 170 pounds, is less than 20 miles per hour. 625 ILCS 5/1-140.10, 1-140.15 (West 2012); *People v. Grandadam*, 2015 IL App (3d) 150111, ¶ 15.

¶ 15    Defendant maintains that a lack of testimony as to the motor scooter's style of engine, horsepower, or existence of fully operable pedals shows that the State failed to prove he possessed a motor vehicle. We disagree. At all times both Conrad Hard and Officer Flynn, who had seen hundreds of motor scooters in the past, described the vehicle as a motor scooter, not as a bicycle. Although the term "motor scooter" is not defined by the current statute, this court has long held, albeit in insurance coverage cases, that "it [is] beyond argument that a motor scooter is a motor vehicle." *Hartford Accident & Indemnity Co. v. Holada*, 127 Ill. App. 2d 472, 478 (1970). We see no reason to deviate from that precedent under these facts. We believe that adopting this meaning of the phrase "motor scooter" merely ascribes the plain ordinary meaning of the words used by the witnesses and that it strains reason to suggest, as defendant argues, that the witnesses actually meant "low speed gas bicycle" when they said "motor scooter." Moreover, the motor scooter was registered with the State of Illinois and contained a VIN, and defendant acknowledged that it could reach about 40 miles per hour. Therefore, the trial court could infer from the evidence presented that the motor scooter's specifications met the requirements of a motor vehicle and not a low-speed electric- or gas-powered bicycle or any other statutory exception for that matter. See *Sutherland*, 223 Ill. 2d at 242 (stating that determining the credibility of the witnesses and drawing reasonable inferences from the evidence are responsibilities of the trier of fact).

¶ 16    Most importantly, it was the role of the trial court as trier of fact to resolve any ambiguity that might exist in the witnesses' use of the phrase "motor scooter," and on appeal we give deference to the trier of fact's resolution of ambiguity. See *People v. Fountain*, 2011 IL App (1st) 083459-B, ¶ 25. It was defendant's obligation to challenge any ambiguous testimony during trial or risk application of this rule on appeal. *Id.* ¶ 26.

¶ 17    Nevertheless, defendant argues that the State failed to sufficiently prove that the motor scooter was a motor vehicle because neither the motor scooter nor a photo of it was entered into evidence. However, the lack of physical evidence relating to the motor scooter does not show that the trial evidence was insufficient to convict him of the charged offense. Here, as this

court has previously held that a motor scooter qualifies as a motor vehicle, and there was sufficient testimonial evidence for the trier of fact to determine that the motor scooter at issue met the specifications of a motor vehicle, neither the motor scooter itself nor a picture of it was required to find defendant guilty of possession of a stolen motor vehicle. See *People v. Herron*, 2012 IL App (1st) 090663, ¶ 23 (stating that where the trial court found a witness's identification and testimony to be credible, the lack of physical evidence had no bearing on the defendant's conviction).

¶ 18    Defendant next contends that the State's evidence was insufficient to prove beyond a reasonable doubt that he was in possession of stolen property. When the State uses evidence of ownership to prove a vehicle was stolen, it must show that the defendant possessed the same vehicle owned by the complainant. *People v. Smith*, 226 Ill. App. 3d 433, 438 (1992).

¶ 19    Here, the evidence established that defendant possessed Hard's stolen 2011 Lingyu 13L150 motor scooter. The following colloquy occurred at trial between the assistant State's Attorney and Hard:

"Q. And once you got to the police station were you directed to a motor scooter?

A. I was.

Q. When you—did you recognize the motor scooter you were directed to?

A. Yes.

Q. What did you recognize?

A. Well, the key. I tried—it was different because some items were missing. It was sort of broken.

Q. And well when you went to the police station and you saw a motor scooter, did you recognize that motor scooter as yours?

A. It didn't look the same, no. I had to actually physically tried [*sic*] to put the key in it. It was different."

Hard further testified that, at the police station, he used the key from his stolen motor scooter to open a storage compartment on the scooter and that the police returned the motor scooter to him. The above testimony clearly shows that defendant was in possession of Hard's motor scooter, which had been stolen.

¶ 20    In so finding, we reject defendant's contention that the trial court admitted inadmissible hearsay testimony, and relied on it, to show Hard's ownership of the motor scooter. Defendant specifically asserts that Officer Flynn's testimony that the motor scooter "came back as stolen" and that he "subsequently f[ou]nd out" that it was registered to Hard was inadmissible hearsay. We initially note that defendant forfeited this issue by failing to object to it at trial. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for review, a defendant must both object at trial and include the alleged error in a written posttrial motion).

¶ 21    Forfeiture aside, the statement was not inadmissible hearsay as it was not being offered for the truth of the matter asserted. See *People v. Ivory*, 333 Ill. App. 3d 505, 514 (2002) (stating that hearsay is testimony of an out-of-court statement offered to establish the truth of the matter asserted). Police officers may testify to information they received during the course of an investigation to explain why they arrested a defendant or took other action, and such testimony is not hearsay as it is offered to show the steps an officer took, rather than for the truth of the matter asserted. *People v. Rush*, 401 Ill. App. 3d 1, 15 (2010). Here, Flynn's testimony was not

offered to prove that the motor scooter was stolen, but merely to explain why the officers arrested defendant and subsequently brought the motor scooter to the police station.

¶ 22    Nevertheless, if Flynn's contested comments were inadmissible hearsay, there was sufficient evidence presented to prove that Conrad Hard had a superior interest in the motor scooter. Thus, we conclude that any alleged error was harmless. See *People v. Sample*, 326 Ill. App. 3d 914, 925 (2001) (stating that the "admission of hearsay is harmless if there is no 'reasonable possibility the verdict would have been different had the hearsay been excluded' " (quoting *People v. McCoy*, 238 Ill. App. 3d 240, 249 (1992)).

¶ 23    Defendant finally argues that the State failed to provide sufficient evidence to prove that he actually knew the motor scooter was stolen. Here, "knowledge" means that defendant was "consciously aware" that the motor scooter was stolen, or that he was aware "of the substantial probability" that it was stolen. 720 ILCS 5/4-5(a) (West 2012). Knowledge is a question of fact for the trier of fact to decide. *People v. Fernandez*, 204 Ill. App. 3d 105, 108 (1990). Direct proof of a defendant's knowledge that the property was stolen is unnecessary, and a defendant's knowledge that the vehicle was stolen can be inferred from the surrounding facts and circumstances, which would lead a reasonable person to believe that the property was stolen. *People v. Santana*, 161 Ill. App. 3d 833, 838 (1987).

¶ 24    In this case, the evidence showed that defendant knew the motor scooter was stolen. Defendant testified that he was familiar with motor scooters as he had previously owned one, the subject motor scooter did not have a license plate, and the ignition had been removed. In describing the missing ignition, Hard testified that the motor scooter was "busted straight down the middle with a big hole" where the ignition should have been. Any reasonable person would have noticed a big hole in the middle of the motor scooter and would have concluded that a motor scooter with a busted out ignition and no license plate was stolen. We thus agree with the trial court's finding that defendant's testimony lacked credibility and that "when there is a big giant hole in the middle of the scooter," it is a "pretty strong indicator that you are in possession of something that has been stolen from somebody else."

¶ 25    We reject defendant's assertion that the trial court placed "great weight" on his failure to implicate his alleged friend Thompson, who defendant maintained owned the motor scooter. In particular, the trial court stated that it found it odd that defendant did not tell Officer Flynn that Thompson owned the motor scooter and that defendant was merely considering buying it. In making this finding, defendant maintains that the trial court incorrectly held defendant's postarrest silence against him. See *People v. Quinonez*, 2011 IL App (1st) 092333, ¶ 27 (stating that "the Illinois evidentiary rule generally prohibits impeachment of a criminal defendant with his postarrest silence"). Despite defendant's contentions to the contrary, there is no evidence in the record that the trial court placed "great weight" on this fact, or that it was even referencing defendant's silence after he was arrested. Instead, the trial court was merely assessing the credibility of defendant's in-court testimony and the events *prior* to his arrest.

¶ 26    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27    Affirmed.