2020 IL App (1st) 170837-U
No. 1-17-0837
Order filed September 30, 2020

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 17207 |
| | ) | |
| DONALD LEIB, | ) | Honorable |
| | ) | Kerry M. Kennedy, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE GRIFFIN delivered the judgment of the court.
Justice Connors concurred in the judgment.
Presiding Justice Mikva dissented.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for being a child sex offender in a school zone is affirmed where the property at issue fell within the statute's purview and the State established that he knew he was on restricted property.

¶ 2    Following a bench trial, defendant Donald Leib was found guilty of being a child sex offender in a school zone and sentenced to one year in prison. On appeal, defendant contends that he was not proven guilty beyond a reasonable doubt because the State failed to establish that he was on "real property comprising any school," and even if the property at issue were school property, the State failed to establish that defendant knew he was on restricted property. We affirm.

¶ 3    Following his arrest, defendant was charged with one count of violating section 11-9.3(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-9.3(a) (West 2014)), in that he, a child sex offender, knowingly was on the real property of Queen of Martyrs School and knew that persons under the age of 18 were present.

¶ 4    Reverend Edward Mikolajczyk testified that he was the pastor of Queen of Martyrs Parish in Evergreen Park. The parish includes a church at 103rd Street and Central Park Avenue, a school with a connected gym at 3550 West 103rd, and a rectory at 10233 Central Park. There is a parking lot on 103rd and St. Louis Avenue (St. Louis parking lot), adjacent to the gym, which is school property. Between September 24 and September 26, 2015, the parish held a festival to raise funds for the church and school which included rides for children in the St. Louis parking lot.

¶ 5    During cross-examination, Mikolajczyk testified that he, along with a committee of parishioners, staged the festival. He admitted that a flyer advertising the festival did not state that it was a school function. A raffle was held as part of the festival, but was not directed by the school. The festival was "under auspices" of Queen of Martyrs and "people understand [it] as being the parish and the school fundraiser."

¶ 6    Defense counsel then showed Mikolajczyk several photographs of the buildings comprising the parish complex, which are included in the record on appeal. Mikolajczyk first identified a photograph of the "grounds of the parish and the school" which also showed the public streets surrounding the complex. The St. Louis parking lot is separated from the school and church by St. Louis Avenue, a public street. Students have recess in a parking lot next to the school or in the St. Louis parking lot. Directly across the street from the St. Louis parking lot is the gym, Queen of Martyrs John Vitha Hall (Vitha Hall). Mikolajczyk acknowledged that the school's name is not

displayed on the gym building. He also identified a sign on the corner of the St. Louis parking lot advertising bingo. The church controls the St. Louis parking lot and gives permission for its use. When defense counsel asked whether the school would have to ask permission to use the lot, Mikolajczyk responded that the school and the church were "synonymous," and the church would "take care of it."

¶ 7    The photographs show that the church is a block from the St. Louis parking lot. Moreover, the school building sits between the church and the St. Louis parking lot.

¶ 8    Kathleen Tomaszewski testified that in 2015 she was principal of Queen of Martyrs School which served prekindergarten through eighth grade. The festival was a fundraiser for the school and parish, and consisted of a carnival, games, food, entertainment, and raffle. The carnival and rides for younger children were in the St. Louis parking lot. St. Louis Avenue was blocked off and attractions were located in the alley between the school and convent, which led to another parking lot. She did not know defendant, he was not the parent or guardian of a student, and he was not given permission to come to the school.

¶ 9    During cross-examination, Tomaszewski acknowledged that the festival was open to the public, its proceeds supported the school and church, and the flyer advertising "Queen of Martyrs Fest" did not mention the school. She noted, however, that the flyer stated that children's games were located in the St. Joseph's room inside the school. While the sign in the St. Louis parking lot advertising bingo does not mention the school, the church gives some of the bingo proceeds to the school. Vitha Hall, which is separated from the St. Louis parking lot by a public street, houses both bingo and student gym activities. Tomaszewski told a defense investigator in August 2016 that the school did not currently use the St. Louis parking lot for recess, but for student dropoff and pickup,

parking for athletic events, scout meetings, and car washes. She did not believe there was a sign indicating that it was the lot where children were dropped off. As principal, Tomaszewski was permitted to use the parking lot at "any time."

¶ 10    Jeanne Cassidy, defendant's neighbor, testified that she knew that he was a registered sex offender. On September 26, 2015, she was at the festival with her husband and six-year-old son when she saw defendant across the street from the school gym, in the corner of the St. Louis parking lot, in front of a children's carnival ride. According to Cassidy, "hundreds" of children were present. Cassidy told her husband that she did not think defendant should be there since he was a sex offender, and her husband notified a Chicago police officer. Cassidy located a picture of defendant on her phone and showed it to the officer, who then spoke to defendant. She also made a report to the Evergreen Park Police Department. When Cassidy went to defendant's home the following day to tell him that she had reported him to the police, he said he understood her concerns and was at the festival with his brother's family.

¶ 11    Chicago police officer Daniel McGreal testified that he stopped by the "carnival held by the school" to see his family while on duty. After a woman shared concerns about defendant's presence, he approached defendant, asked for identification, and ran defendant's information. The search revealed no warrants and gave no further information about defendant's background. However, McGreal told defendant he should not be at the festival. Defendant agreed and left. McGreal only saw defendant in the St. Louis parking lot, not across the street where the gym, church, and school were located.

¶ 12    The State entered a stipulation that defendant was convicted of child abduction in case 06 CR 04312 and required to register as a child sex offender. Defense counsel then stated that the conviction was for "attempted luring."

¶ 13    At the close of the State's case, the defense moved for a directed finding, arguing that the State had not established beyond a reasonable doubt that defendant knew that the St. Louis parking lot was school property, and "for all appearances" the parking lot was church property. Defense counsel argued that the St. Louis parking lot "at best" may have been used by students, but that "dual usage" did not suggest that the lot was school property. The State responded that the festival was a school fundraiser on property used for school functions. The trial court denied the motion.

¶ 14    The defense presented the testimony of Robert Pellegrini, the festival chairperson. Pellegrini identified a photograph of "the parish parking lot" on St. Louis Avenue with the bingo sign on the corner. He acknowledged that the flyer did not state that the festival was for a "school purpose," and described the St. Louis parking lot as the "school, church, parish parking lot."

¶ 15    Robert Leib, defendant's brother, testified that he invited defendant to attend the festival. Robert is a Queen of Martyrs parishioner. He identified a photograph of the St. Louis parking lot as "the church parking lot," and believed it was church, not school, property. While at the festival, Robert and defendant were approached by a police officer who asked defendant if he was a sex offender. After running defendant's identification, the officer told them to leave because people were uncomfortable. During cross-examination, Robert acknowledged that defendant's status as a sex offender prohibited him from being around children in a school area but asserted that the festival was a "church carnival." During redirect, Robert testified that he would not have brought defendant if he did not believe the festival was a church function.

¶ 16    Irene Smith, the business manager for Queen of Martyrs parish, testified that the church owned the St. Louis parking lot. The church and the school cannot be differentiated because the two entities share the same federal identification number. Bingo players and people attending functions in the gym park in the St. Louis parking lot.

¶ 17    The defense entered a stipulation that the Evergreen Park Police Department incident report in this case identified the premises as "church, synagogue or slash temple." The defense also moved to admit its exhibits, including the photographs of the parish complex, into evidence, which the court permitted.

¶ 18    In finding defendant guilty, the court noted that although the defense theory of the case was that a difference existed between school and church property, Mikolajczyk was "pretty clear" that it was "all one." The court also noted that section 11-9.3(a) of the Code included the phrase "school zone," and that testimony established St. Louis Avenue was blocked off for the festival, which to the court meant that the St. Louis parking lot was part of the school zone for the day.

¶ 19    Defendant filed a motion and memorandum in support of a new trial alleging the State failed to prove beyond a reasonable doubt that the St. Louis parking lot was real property comprising a school and that defendant knew it was such. The trial court denied the motion. After a hearing, the court sentenced defendant to one year in prison.

¶ 20    On appeal, defendant contends that his conviction should be reversed because the State did not prove beyond a reasonable doubt that the St. Louis parking lot was "real property comprising any school." He further argues that even if the St. Louis parking lot were school property within the meaning of the statute, the State failed to prove his knowledge beyond a reasonable doubt.

¶ 21　When a challenge is made to the sufficiency of the evidence at trial, a reviewing court must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31. In making this determination, we review the evidence in the light most favorable to the State. *Id.* All reasonable inferences from the record in favor of the prosecution will be allowed. *People v. Bush*, 214 Ill. 2d 318, 326 (2005). A trier of fact is not required to disregard inferences which flow normally from the evidence before it or seek out any "possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Campbell*, 146 Ill. 2d 363, 380 (1992).

¶ 22　As a child sex offender, defendant is prohibited from knowingly being present in "any school building, on real property comprising any school, or in any conveyance owned, leased, or contracted by a school to transport students to or from school or a school related activity when persons under the age of 18 are present," unless he is attending a conference at a school concerning his own child. 720 ILCS 5/11-9.3(a) (West 2014).

¶ 23　Defendant does not contest that he is a child sex offender or that he is barred from being present on "real property comprising any school"; rather, he contends that the St. Louis parking lot does not qualify within the meaning of the statute because it is separated from the school and gym by a public street. The State, on the other hand, contends that the St. Louis parking lot is real property comprising part of Queen of Martyrs school. The parties agree that the statute does not state whether a parking lot is real property comprising a school and that no Illinois court has answered the question. Consequently, before reaching defendant's challenge to the sufficiency of the evidence, we consider whether the St. Louis parking lot may qualify as "real property comprising any school" as a matter of law.

¶ 24    This issue presents a question of statutory construction which we review *de novo*. *People v. Lloyd*, 2013 IL 113510, ¶ 25. When construing a statute, our primary objective "is to ascertain and give effect to the intent of the legislature," and the "most reliable indicator of legislative intent is the language of the statute." *People v. Boyce*, 2015 IL 117108, ¶ 15. "In the event there is an ambiguity, the rule of lenity requires that it be resolved in a manner that favors the defendant; however, this rule must not be stretched so far as to defeat the legislature's intent." (Internal quotation marks omitted.) *Id.* "In the course of statutory construction, we may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Id.*

¶ 25    Defendant is correct that the statute does not define what is included in "real property comprising any school." See 720 ILCS 5/11-9.3(a) (West 2014). The Code, however, defines a "school" as "a public, private, or parochial elementary or secondary school, community college, college, or university and includes the grounds of a school." 720 ILCS 5/2-19.5 (West 2014). "Grounds" are defined as "the area around and belonging to a house or other building." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/grounds (last visited Aug. 13, 2020).

¶ 26    Accordingly, because the Code's definition of school includes its grounds, *i.e.*, the area around and belonging to school buildings, we conclude that the parking lot of a school would qualify as part of the school grounds pursuant to the Code. Therefore, a school parking lot qualifies as "real property comprising any school" under section 11-9.3(a). Applying the statute to a school's parking lot, where students congregate, works to achieve the statute's purpose to keep child sex offenders away from school grounds where children congregate. See *Boyce*, 2015 IL

117108, ¶ 15 (when construing a statute, a court "may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another"). To construe the statute such that parking lots are not included in school grounds, and therefore, not off-limits to child sex offenders, would end the statute's reach at the door to the school and contradict the definition of school which includes its grounds.

¶ 27    In his brief, defendant concedes that a school parking lot could qualify as "real property comprising any school," but only in those cases where the parking lot is contiguous to the school building. We note, however, that section 11-9.3(a) of the Code does not include a requirement that all real property comprising a school be contiguous, and we decline to read such a requirement into the statute. See *People v. Shinaul*, 2017 IL 120162, ¶ 17 ("Absent express language in the statute providing an exception, we will not depart from the plain language and read into the statute exceptions, limitations, or conditions that the legislature did not express."). To exclude the portions of school grounds that are separated from physical buildings by public streets would be counter to the statute's intent, to prevent the presence of child sex offenders on school grounds where children congregate, solely based on the fact that certain grounds do not touch school buildings and fail to recognize the reality of urban school campuses.

¶ 28    Having determined that a school parking lot is "real property comprising any school" under section 11-9.3(a) of the Code, we now turn to whether the evidence at trial established that the St. Louis parking lot qualified within the meaning of the statute. Here, taking the evidence in the light most favorable to the State, a rational trier of fact could have found that the St. Louis parking lot qualified when evidence established that it was used for student dropoff and pickup, recess, and parking for athletic events, scout meetings, and car washes. Although defendant contends that the

fact that the St. Louis parking lot was separated from the school buildings by a public street was fatal to the State's case, we disagree. As discussed above, there is no requirement in the Code that school grounds be contiguous, and we decline to read such a requirement into the statute.

¶ 29     In the alternative, defendant contends that even if the St. Louis parking lot were "real property comprising any school," the State failed to prove that he knowingly violated the statute. Defendant again notes that the St. Louis parking lot is across a public street from the school buildings and had a sign advertising bingo. He further argues that the festival flyer did not indicate that it was a school event. Defendant concludes that no rational trier of fact could have found that he was consciously aware that the St. Louis parking lot was "real property comprising any school."

¶ 30     For purposes of section 11-9.3(a) of the Code, "knowledge" means that a defendant was "consciously aware" that he was on real property comprising a school, or that he was aware "of the substantial probability" that he was on such property. 720 ILCS 5/4-5(a) (West 2014). Knowledge is a question of fact for the trier of fact to decide. *People v. Fernandez*, 204 Ill. App. 3d 105, 108 (1990). A defendant's knowledge is generally established by circumstantial evidence rather than direct proof. *People v. Weiss*, 263 Ill. Ap. 3d 725, 731 (1994). In other words, a defendant's knowledge that he was present on real property comprising a school "can be inferred from the surrounding facts and circumstances, which would lead a reasonable person to believe" such. *People v. Frazier*, 2016 IL App (1st) 140911, ¶ 23.

¶ 31     In this case, a rational trier of fact could have found that defendant knew that he was present on real property comprising a school when Queen of Martyrs Parish's pastor and business manager both testified that the school and church were one entity and the parish operated an elementary school on the grounds. Moreover, although the flyer advertising the festival did not explicitly state

that it was a function to benefit both the church and school, the flyer did state that children's games were available in the St. Joseph's room, which was located in the school. Considering that the festival's purpose was to raise funds for a parish that included a parochial elementary school, and "hundreds" of children were present, a reasonable person could infer that the parking lot where the rides for young children were located was school property. *Id.*

¶ 32    We thus agree with the trial court's determination that, considering the rides and the many children present at the festival, defendant had knowledge that the St. Louis parking lot was real property comprising a school. Although defendant's brother testified that he believed the festival was a church function and there was evidence that the St. Louis parking lot did not bear "school" signage, a trier of fact is not required to disregard the inferences that normally flow from the evidence or to seek out all possible explanations consistent with a defendant's innocence and elevate them to reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60.

¶ 33    Although the dissent concludes that "there is no way" that defendant could have known that the St. Louis parking lot was "real property comprising any school," the surrounding facts and circumstances in this case would have lead a reasonable person to believe that he was on real property comprising a school. Here, the school was situated between the St. Louis parking lot and the church, such that the church was a block away from the St. Louis parking lot. Additionally, the festival flyer advertised children's activities in a room located in the school, the street separating the St. Louis parking lot from Vitha Hall and the school was closed during the festival, and the St. Louis parking lot hosted carnival rides for children. Moreover, although defendant's brother testified that he believed the festival was a church function, Mikolajczyk testified that the festival was "underst[ood] as being the parish and the school fundraiser." Considering the circumstances

of this case, we cannot say that no trier of fact could found that defendant was aware of the substantial probability that the St. Louis parking lot was real property comprising a school.

¶ 34    We reverse a conviction only when the evidence was "so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Brown*, 2013 IL 114196, ¶ 48. This is not one of those cases. Accordingly, we affirm defendant's conviction.

¶ 35    For the forgoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 36    Affirmed.

¶ 37    Mikva, Presiding J., dissenting.

¶ 38    I agree with the majority that a rational trier of fact could have found, based on the evidence presented and despite the conflicting testimony, that the parking lot where the festival occurred was part of the grounds of the school and that, therefore, Mr. Leib was prohibited from being there when "persons under the age of 18 [were] present." 720 ILCS 5/11-9.3(a) (West 2014).

¶ 39    The trial judge's actual finding was that Mr. Leib was in a "school zone," which is not what the statute requires, although "school zone" is in the title of the statute. Instead, the statute prohibits Mr. Leib from being present on "real property comprising a school" and the Code defines "school" as "a public, private, or parochial elementary or secondary school, community college, college, or university and includes the grounds of a school." 720 ILCS 5/2-19.5 (West 2014). The majority apparently equates "school zone" and school "grounds," and I can accept this equivalency along with the majority's conclusion that the evidence supports the trial court's factual finding that the festival took place on "real property comprising a school."

¶ 40    However, as both the majority and the trial court acknowledge, Mr. Leib was not in violation of the statute unless the evidence also showed that he *knew* that he was on school grounds

when he was present with his brother at the festival. On this necessary element, there was no evidence and no proper factual finding by the court to which we should defer.

¶ 41 There was no testimony that any sign on the school, at the festival, or on the festival flyer would have advised Mr. Leib that he was on school property. Indeed, the witnesses themselves disagreed about whether the parking lot where the festival occurred was part of the school or part of the church. Irene Smith, the business manager for the church, testified that the parking lot had been considered "church" property for the 20 years she had worked there. The police report also listed the location of the festival as a "church synagogue or temple." The fact that there was a genuine disagreement by disinterested witnesses as to whether or not this parking lot was part of a school or part of a church undermines any suggestion that Mr. Leib knew that this was school property. And, of course, Robert Leib, testified that he had invited his brother to attend the festival believing that the parking lot where the festival occurred was church, rather than school, property. In short, there is simply no way that Mr. Leib can be charged with knowledge of something which was not marked by any signage and on which even the witnesses and the church employees could not agree.

¶ 42 The trial court's finding, to which we would, of course, generally defer, simply is not a finding that the evidence demonstrated that Mr. Leib had this knowledge. Instead, the trial court found that the parking lot was part of the "school zone," and then concluded that it "did not see how any reasonable person, especially a convicted sex offender, would not realize that."

¶ 43 This was not a factual finding that Mr. Leib had actual knowledge that he was on school grounds. Rather, it appears to be a conclusion by the trial court that Mr. Leib *should* have known where he was. As we have made clear, however, where, as here, a criminal statute requires that the

defendant act with knowledge: "[k]nowledge" is not the same as "should have known." *People v. Nash*, 282 Ill. App. 3d 982, 986 (1996).

¶ 44    The majority concludes that Mr. Leib's knowledge that he was present on real property comprising a school "can be inferred from the surrounding facts and circumstances, which would lead a reasonable person to believe" that he was on school property, citing our decision in *People v. Frazier*, 2016 IL App (1st) 140911, ¶ 23. However, this case is a stark contrast to *Frazier*. In that case, we noted:

> "The subject motor scooter did not have a license plate, and the ignition had been removed. In describing the missing ignition, [a witness] testified that the motor scooter was 'busted straight down the middle with a big hole' where the ignition should have been. Any reasonable person would have noticed a big hole in the middle of the motor scooter and would have concluded that a motor scooter with a busted out ignition and no license plate, was stolen." *Id.* ¶ 24.

¶ 45    The only circumstance that the majority can point to here as making a necessary condition similarly obvious is the fact that many children were present. But it is not at all surprising that children were present at a festival with rides and games designed specifically for them, and certainly a school is not the only place that children congregate. The majority also cites the fact that a flyer indicated that these games for children were in the St. Joseph's room and that there was testimony that the St. Joseph's room is in the school. To me this only underscores the fact that the evidence did not show that the flyer said anything about the St. Joseph's room being in a school, that Mr. Leib ever went near the St. Joseph's room, that Mr.

Leib ever came in contact with the school building itself, or that he saw any sign that indicted he was in or even near a school.

¶ 46    In my view, both the trial court and the majority are simply assuming that Mr. Leib knowingly came onto school grounds. Such an assumption—even if it were rational—cannot take the place of evidence. Moreover, I do not find it to be a rational assumption. Mr. Leib was compliant with the draconian requirements of the sex offender registration laws for eight years. One thing he certainly knew was that school grounds were off limits to him—while festivals were not. I am unwilling to assume that he knew that a festival that was being held in a parking lot, where there was no signage to indicate a school, was actually on school grounds. I would reverse this conviction.

¶ 47    I respectfully dissent.