2020 IL App (1st) 182538-U

No. 1-18-2538

Order filed November 25, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 CR 14620 |
| | ) | |
| ANDREW BINION, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse defendant's conviction for possession of a stolen motor vehicle where the trial court abused its discretion by allowing a witness to testify about the violent circumstances surrounding his vehicle being stolen.

¶ 2    Following a jury trial, defendant Andrew Binion was convicted of possession of a stolen motor vehicle and sentenced to 16 years' imprisonment as a Class X offender based on his criminal background. On appeal, defendant contends that the trial court: (1) erred by allowing a witness to

testify about an earlier armed vehicular hijacking; (2) erred in sentencing him as a Class X offender; and (3) alternatively, sentenced him excessively. For the reasons that follow, we reverse defendant's conviction.

¶ 3                                I. BACKGROUND

¶ 4                                    A. Pretrial

¶ 5       In the early morning hours of September 27, 2017, three unknown individuals robbed Darnell Veal's friend at gunpoint and then one unknown individual carjacked Veal of his blue Hyundai at gunpoint. Some 20 hours later, the police arrested defendant after he was found driving Veal's vehicle. The State accordingly charged defendant with one count of possession of a stolen motor vehicle. Prior to trial, defendant filed a motion *in limine*, in part, seeking to prevent the State from eliciting any testimony about the earlier armed vehicular hijacking. Defendant argued that the incident was not relevant to his case, and because of the violent nature of the offense, there was a serious risk of unfairly prejudicing him by allowing the jury to hear about the incident.

¶ 6       In ruling on defendant's motion, the trial court initially highlighted the evidence the State expected to show at trial. The court stated that, after the police attempted to pull over defendant because of a license plate issue and possibly inoperative headlights, he attempted to flee, crashed the vehicle and then attempted to run away. The court observed that the earlier vehicular hijacking helped show defendant's knowledge and state of mind upon being pulled over by the police and helped explain why he did not want to be caught inside the vehicle. In response to defense counsel's contention that the State was attempting to improperly elicit proof of other-crimes evidence, the court rejected the argument and noted that the State would not be eliciting testimony that defendant was the offender in the earlier vehicular hijacking. Indeed, the court pointed out

that it had already barred the State from using video evidence that would have shown the hijacking, in part, because the video did not clearly show the offender's face.

¶ 7    Additionally, defense counsel asked the trial court if she could ask the officers if defendant had ever been arrested for the earlier offense. The court informed her that she could elicit such testimony, but warned her that she could open the door to further testimony from the State about the offense. Given that the State was not attempting to show defendant was the armed carjacker and testimony about the carjacking would help prove an element of the charged offense, the court concluded that the evidence was "more probative than prejudicial." Consequently, the court denied defendant's motion *in limine* as it related to testimony about the vehicular hijacking.

¶ 8                                    B. Trial

¶ 9    The case proceeded to a jury trial, where the State's evidence showed that, around 1 a.m. on September 27, 2017, Darnell Veal was sitting inside his blue Hyundai at a gas station located at the intersection of South Wentworth Avenue and West 127th Street in Chicago. While there, Veal observed three unknown individuals, including one holding a firearm, rob his friend, Mack Harris, who was leaving the gas station store. Because it was dark outside, Veal could not see the offenders' faces. Shortly after, an unknown individual came up to Veal's vehicle, told him to get out and fired a gunshot over the vehicle's hood in Veal's direction. Veal quickly exited and jumped on the ground. The armed individual jumped into Veal's car and drove off without his permission. The other individuals who robbed Mack also left the scene. Veal observed Mack "run[] for his life" and then, Veal called the police. When officers arrived at the gas station, Veal told them what happened. The officers showed him photographs of individuals, but because he did not get a good look at the offenders' faces, he could not identify anyone.

¶ 10     At around 10 p.m. that night, approximately 20 hours after the vehicular hijacking, Chicago police officers in an unmarked vehicle observed a blue Hyundai driving without its headlights on in the vicinity of East Marquette Road and South Rhodes Avenue in Chicago. The officers made a U-turn, began to follow the Hyundai and noticed that the vehicle had a temporary Illinois license plate. As the Hyundai began to accelerate, one of the officers ran the license plate through a database and learned that it was expired. This caused the officers to activate their lights and sirens, but the Hyundai accelerated even faster. The vehicle made a left-hand turn down the wrong way of a one-way street and immediately crashed into a parked car. Defendant, who had been driving the vehicle, exited the car and ran away. While running, he took off a sweatshirt he was wearing and tossed it down on the ground. Shortly thereafter, officers arrested him. Two other occupants of the Hyundai were detained at the scene of the crash. Afterward, an officer searched the vehicle and observed a permanent license plate inside. Both the permanent license plate and the temporary license plate were registered to the Hyundai. The police did not recover any weapons on defendant or in the vehicle. After defendant was taken into custody, an officer informed him of his *Miranda* rights, but defendant did not want to speak. Later, when an officer transported defendant to be fingerprinted, defendant asked the officer, "Are you the officer I dusted[?]," which the officer understood to mean escaped from.

¶ 11     Upon being reunited with his vehicle, Veal noticed that it was heavily damaged and his license plate had been removed. At trial, the State showed Veal a photograph of defendant, and Veal asserted that he did not know defendant and never gave him permission to drive his vehicle.

¶ 12     Following the State's case, the defense did not present any witnesses. Thereafter, the jury found defendant guilty of possession of a stolen motor vehicle.

¶ 13                                    C. Posttrial and Sentencing

- 4 -

¶ 14    Defendant subsequently filed a motion for new trial, arguing, *inter alia*, that the trial court erred in allowing Veal to testify about the armed vehicular hijacking. The court, however, denied the motion in its entirety, and the case proceeded to sentencing.

¶ 15    Defendant's presentence investigation report revealed that he was born on August 28, 1986, and had several prior offenses, including a 2004 conviction for delivery of a controlled substance (cocaine), which he committed in December 2003 as a 17-year-old, a 2006 conviction for second-degree murder, which he committed in December 2004 as an 18-year-old, and a 2016 conviction for possession of cannabis.[1] Additionally, the report revealed that defendant had been charged with possession of a counterfeit credit card while out on bond in the present case.

¶ 16    Prior to defendant's sentencing hearing, he pled guilty to possession of a counterfeit credit card, a Class 3 offense. At his sentencing hearing, the State highlighted defendant's criminal background, in particular describing the events that led to his second-degree murder conviction. Meanwhile, defense counsel acknowledged defendant's criminal history, but remarked that when he committed second-degree murder, he was only 18 years old. Counsel asserted that, while he was technically not a juvenile, he was nevertheless "a juvenile in mindset." Counsel also observed the difficulties defendant had faced in life, including being diagnosed with attention deficit hyperactivity disorder and bipolar disorder, as well as being enrolled in special education classes in school.

---

[1] The record is inconsistent in labeling defendant's 2004 conviction. His presentence investigation report actually indicated that he was convicted of possession of a controlled substance (cocaine) with intent to deliver. In an early pretrial court appearance, the State noted the conviction was for "possession of a controlled substance case," but during sentencing, the State remarked that it was for "delivery of a controlled substance." A supplemental record included in the record on appeal appears to show that the conviction resulted from a one-count information that charged him with possession of a controlled substance (cocaine) with intent to deliver. However, on appeal, both parties refer to this conviction as one for delivery of a controlled substance, and we will do the same.

¶ 17 Following the parties' arguments, the trial court sentenced defendant to 2 years' imprisonment for possession of a counterfeit credit card. In regard to the instant case, the court asserted that, because of defendant's criminal background, he had to be sentenced as a Class X offender. As a result, the court sentenced him to 16 years' imprisonment for possession of a stolen motor vehicle and ordered the sentence to run consecutively to his sentence for possession of a counterfeit credit card. Defendant moved the court to reconsider its sentence, arguing that the State failed to prove his "eligibility for enhanced penalty or extended term," but the court denied the motion. Defendant subsequently appealed.

¶ 18                                   II. ANALYSIS

¶ 19                          A. Vehicular Hijacking Testimony

¶ 20 Defendant first contends that the trial court erred by allowing Darnell Veal to testify about the armed vehicular hijacking that occurred approximately 20 hours before he was arrested. Defendant argues that Veal's testimony was not relevant and because the testimony created the inference that he was involved in the earlier crime, Veal's testimony was highly prejudicial.

¶ 21 In ruling whether evidence is admissible, the first step the trial court must take is determining whether the evidence is relevant. Ill. R. Evid. 402 (eff. Jan. 1, 2011). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Evidence that is not relevant is not admissible, and generally, any evidence that is relevant is admissible. Ill. R. Evid. 402 (eff. Jan. 1, 2011). An exception to the general rule that relevant evidence is admissible exists where the probative value of the relevant evidence is substantially outweighed by the danger of unfair prejudice. Ill. R. Evid. 403 (eff. Jan. 1, 2011). The trial court has broad discretion in deciding whether to allow evidence into a trial.

*People v. Pikes*, 2013 IL 115171, ¶ 12. As such, the court's decision will not be reversed unless the court has abused its discretion (*id.*), which occurs only where its ruling was unreasonable or arbitrary such that no reasonable person would adopt the same view. *People v. Lovejoy*, 235 Ill. 2d 97, 125 (2009).

¶ 22    In order to prove defendant guilty of possession of a stolen motor vehicle, the State was required to show he (1) possessed a vehicle (2) that he was not entitled to possess and (3) knew the vehicle was stolen. *People v. Cox*, 195 Ill. 2d 378, 391 (2001). The undisputed evidence in this case showed that defendant was the driver of the blue Hyundai and that he was not entitled to possess the vehicle. As such, the only element in dispute at trial was whether defendant knew the vehicle was stolen. In proving this element, the State did not need to show defendant's knowledge using direct evidence. *People v. Frazier*, 2016 IL App (1st) 140911, ¶ 23. Rather, his knowledge could be proven through "surrounding facts and circumstances, which would lead a reasonable person to believe that the property was stolen" (*id.*; see also 625 ILCS 5/4-103(a)(1)(A) (West 2016)) or his "exclusive unexplained possession over the stolen *** vehicle." 625 ILCS 5/4-103(a)(1)(B) (West 2016); see also *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 53.

¶ 23    In this case, the trial court found the testimony of the earlier armed vehicular hijacking relevant to prove defendant's knowledge that the vehicle was stolen. But the only aspect of Veal's testimony about his vehicle being stolen that tended to prove defendant knew it was stolen was the fact that it was stolen 20 hours before defendant was found driving it. A jury could reasonably infer from this short timeframe that defendant, however he obtained the vehicle, must have done so knowing the vehicle was not acquired by legitimate means. However, merely because this aspect of Veal's testimony was relevant did not automatically transform the entire narrative about *how* his vehicle was stolen into relevant evidence. Nothing about Veal's vehicle being taken at

gunpoint, including the offender firing a gunshot, or his friend being the victim of an armed robbery beforehand tended to prove that defendant knew the vehicle was stolen. As such, while the fact that Veal's vehicle was stolen only 20 hours before defendant was found driving it was relevant, the violent details surrounding it being stolen were not. Thus, on this basis, Veal's testimony about the violent nature of his vehicle being stolen should have been deemed inadmissible. See Ill. R. Evid. 402 (eff. Jan. 1, 2011) ("Evidence which is not relevant is not admissible.").

¶ 24    But even if the violent nature of Veal's vehicle being stolen had some relevance, it was clearly and substantially outweighed by the risk of unfair prejudice. Veal's testimony injected an aura of violence into defendant's trial where none should have existed. Additionally, although Veal never identified defendant as one of the offenders, there was an insinuation that defendant was involved in the carjacking or, at the very least, the robbery of Veal's friend. Notably, in Veal's testimony, he stated three people had robbed his friend at gunpoint, and when the police arrested defendant, he was with two other people. While this evidence was not technically other-crimes evidence, as the State never directly implicated defendant in those offenses (see *Pikes*, 2013 IL 115171, ¶ 16), the evidence nevertheless suggested that defendant was involved. See *Jacobs*, 2016 IL App (1st) 133881, ¶¶ 69-70 (where the probative value of evidence is "slight at best" but the risk of unfair prejudice is great because such evidence "create[s] an unmistakable inference that defendant was involved in another crime for which he was not on trial," that evidence is inadmissible).

¶ 25    Instead of describing a violent armed vehicular hijacking and armed robbery, Veal could have simply testified that his vehicle was stolen shortly after midnight on September 27, 2017, without any reference to violent details surrounding it. Given the violent nature of the armed

vehicular hijacking and armed robbery as well as the inference that defendant was involved, the admission of this testimony by Veal posed a severe risk of unfair prejudice to defendant such that he would not be judged solely on his actions related to the possession of a stolen motor vehicle, but also on the earlier acts of violence committed against Veal and his friend. Consequently, the trial court's decision to allow Veal to testify about the violent details surrounding his vehicle being stolen was unreasonable and constituted an abuse of discretion.

¶ 26    However, merely because improper evidence was admitted at trial does not automatically mean reversal is warranted. See *People v. Reid*, 179 Ill. 2d 297, 314 (1997) (evidentiary errors are subject to a harmless-error analysis). Under a harmless-error analysis, the critical question is whether it appears beyond a reasonable doubt that the error did not contribute to the verdict. *People v. Patterson*, 217 Ill. 2d 407, 428 (2005). There are three different approaches to answering this critical question: (1) analyzing the other evidence from the case to determine if that evidence overwhelmingly supported the defendant's conviction; (2) determining whether the improperly admitted evidence was merely cumulative to the other evidence properly admitted at trial; (3) focusing on whether the error contributed to the verdict. *Id.*

¶ 27    Under the first approach, we cannot say the evidence overwhelmingly established defendant's guilt for possession of a stolen motor vehicle. Notably, there was no direct evidence that he knew the vehicle was stolen. Although the jury could infer from defendant's attempt to evade the police, both in the vehicle and on foot, that he knew the vehicle was stolen (see *Frazier*, 2016 IL App (1st) 140911, ¶ 23), his flight did not conclusively establish that fact and there could be other, more innocuous explanations for his actions. See *People v. Horton*, 2019 IL App (1st) 142019-B, ¶ 69 (observing "a troubling reality that young minority men may flee from police to avoid 'the recurring indignity of racial profiling' as opposed to attempting to conceal criminal

activity" (quoting *Commonwealth v. Warren*, 58 N.E.3d 333, 342 (2016))). Moreover, while the jury could infer from defendant's failure to provide the police an explanation for being in possession of a recently stolen motor vehicle that he knew the vehicle was stolen (see *Jacobs*, 2016 IL App (1st) 133881, ¶ 53), that too does not conclusively establish this fact. As such, defendant's flight, his failure to provide an explanation and the recency of Veal's vehicle being stolen did not overwhelmingly demonstrate his guilt. Under the second approach, Veal's testimony about the violent nature of his vehicle being stolen in addition to his testimony about his friend being the victim of an armed robbery was not cumulative to any other evidence properly admitted at trial. And under the third approach, we believe there was a real risk that defendant's guilt for possession of a stolen motor vehicle was, in part, based on the jury's belief that he was also involved in one or two violent acts some 20 hours earlier. Consequently, we are not persuaded beyond a reasonable doubt that the erroneous admission of Veal's testimony did not contribute to his verdict. Therefore, the trial court's error was not harmless.

¶ 28 Although we have concluded that defendant's conviction for possession of a stolen motor vehicle cannot stand, we must determine whether to reverse it outright or remand the matter for a new trial. Under the double jeopardy clause of the United States Constitution's fifth amendment, no person may "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. Similar provisions also exist in the Illinois Constitution (see Ill. Const. 1970, art. I, § 10) and in our statutes. See 720 ILCS 5/3-4(a) (West 2016). "The cornerstone of the double jeopardy clause is 'that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found

guilty.' " *People v. Williams*, 188 Ill. 2d 293, 307 (1999) (quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957)).

¶ 29     The double jeopardy clause forbids the retrial of a defendant to afford the State another opportunity to present evidence it failed to present in the first trial, but it "does not preclude retrial when a conviction has been overturned because of an error in the trial proceedings." *People v. Drake*, 2019 IL 123734, ¶ 20. If the evidence presented at the first trial was insufficient to support the defendant's conviction, he cannot be retried. *Id.* However, retrial is the proper remedy if the evidence, including the improperly admitted evidence, presented at the first trial was sufficient to support the defendant's conviction. *Id.* ¶ 21. In considering the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

¶ 30     In this case, as noted, the only element of possession of a stolen motor vehicle in dispute was whether defendant knew the vehicle was stolen. And while there was not overwhelming evidence defendant knew the vehicle was stolen, there was nevertheless sufficient evidence from which the jury could infer that he knew it was stolen. As noted, defendant attempted to evade the police, both in the vehicle and then on foot, and discarded his sweatshirt while running away. See *People v. Whitfield*, 214 Ill. App. 3d 446, 454 (1991) ("Sufficient proof of intent to possess a stolen motor vehicle can be found in witness testimony that defendant drove a stolen vehicle down an alley, crashed it and then fled."). Moreover, defendant provided the police no explanation as to why he had exclusive possession of a recently stolen vehicle. See *People v. Steading*, 308 Ill. App. 3d 934, 939 (1999) (observing that the evidence clearly showed defendant knew the vehicle he was driving was stolen because he "offered no evidence *** explaining why he had possession of

a stolen truck"). When this evidence is viewed in the light most favorable to the State, a rational trier of fact could have found that the State proved the essential elements of possession of a stolen motor vehicle, in particular that defendant knew the vehicle was stolen, beyond a reasonable doubt. Consequently, although we reverse defendant's conviction for the offense, we remand the matter for a new trial consistent with the evidentiary exclusions set forth herein. See *Drake*, 2019 IL 123734, ¶ 21.

¶ 31     Despite this result, we will still address defendant's contention of error concerning him being sentenced as a Class X offender because if he is found guilty upon remand, his eligibility for a Class X sentence would once again be an issue. See *People v. Jones*, 105 Ill. 2d 342, 353 (1985) (where the reviewing court reverses a conviction based on one issue, it should address any other issues that are likely to recur upon remand).

¶ 32                              B. Sentencing as a Class X Offender

¶ 33     Defendant also contends that the trial court improperly sentenced him as a Class X offender where one of his two potentially qualifying prior convictions occurred when he was 17 years old and, under current law, would not render him eligible for Class X sentencing.

¶ 34     Because defendant's conviction for possession of a stolen motor vehicle was a Class 2 felony (625 ILCS 5/4-103(a)(1), (b) (West 2016)) and he was more than 21 years old when he committed the offense, he became subject to mandatory Class X sentencing if his criminal background was severe enough. 730 ILCS 5/5-4.5-95(b) (West 2016). To have the requisite criminal background to be subject to a mandatory Class X sentence, defendant must have been convicted twice, in state or federal court, "of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony." *Id.* We note that the trial court did not expressly state which of

defendant's prior convictions were the predicate offenses to him being a Class X offender. But both parties agree that the court used his 2004 conviction for delivery of a controlled substance and 2006 conviction for second-degree murder, and both parties agree these offenses were Class 2 felonies or greater when defendant committed them.

¶ 35    Defendant, however, argues that, because he was 17 years old at the time he committed delivery of a controlled substance, an amendment to the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5-120 (West 2016)) has resulted in his offense not *now* being classified as a Class 2 or greater felony. According to defendant, because of the amendment, had he committed delivery of a controlled substance as a 17-year-old on September 27, 2017—the date he committed possession of a stolen motor vehicle—he would have been tried and convicted as a juvenile, not as an adult. Whether defendant's 2004 conviction for delivery of a controlled substance constitutes a qualifying offense for Class X sentencing involves a matter of statutory construction, which, as a question of law, we review *de novo*. *People v. Baskerville*, 2012 IL 111056, ¶ 18.

¶ 36    As noted, when defendant committed the offense of delivery of a controlled substance in December 2003, he was 17 years old. At that time, the Juvenile Court Act provided that juvenile courts had exclusive jurisdiction over offenses committed by individuals under 17 years old with some exceptions not relevant here. 705 ILCS 405/5-120 (West 2002). Thus, because defendant was 17 years old at the time he committed the offense, he was excluded from juvenile court, and tried and convicted in adult court. However, in 2013, our legislature amended the Juvenile Court Act to provide exclusive jurisdiction to juvenile courts for offenders under 18 years old with some exceptions not relevant here. Pub. Act 98-61 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120). Thus, had defendant committed delivery of a controlled substance after the amendment to section

5-120 of the Juvenile Court Act, he would have been subject to proceedings in juvenile court, not proceedings in adult court. And had defendant been adjudicated delinquent in juvenile court, that would not have been considered a felony conviction. *People v. Taylor*, 221 Ill. 2d 157, 182 (2006). As such, the overarching question is whether to apply the amendment to section 5-120 of the Juvenile Court Act retroactively or prospectively for purposes of Class X sentencing.

¶ 37    Recently, in *People v. Miles*, 2020 IL App (1st) 180736, this court addressed a nearly identical issue to the one defendant raises, though it was based not only on the age of the offender but also the type of offense in relation to the Juvenile Court Act.[2] In *Miles*, the defendant was convicted of burglary and sentenced as a Class X offender based, in part, on a conviction for aggravated vehicular hijacking with a firearm and armed robbery that occurred in 2005 when he was 15 years old. *Id.* ¶¶ 1, 3. On appeal, this court held that, in light of the amendments to not only section 5-120 of the Juvenile Court Act, but also section 5-130 of the Juvenile Court Act, the defendant could not be sentenced as a Class X offender. *Id.* ¶¶ 6-7, 11.[3] The court reasoned that the plain language of section 5-4.5-95(b) of the Unified Code of Corrections (Code), which provided that a qualifying prior conviction for Class X sentencing must be considered "an offense now *** classified in Illinois as a Class 2 or greater Class felony," mandated such a finding because, had the defendant committed the aggravated vehicular hijacking and armed robbery as a 15-year-old on the date he committed his burglary, those offenses "would have been resolved with delinquency proceedings in juvenile court rather than in criminal proceedings." *Id.* As such, the

---

[2] In September 2020, our supreme court granted the State's petition for leave to appeal in *Miles*, 2020 IL App (1st) 180736, *appeal allowed*, No. 126047 (Sept. 30, 2020). However, a month later, the State moved to dismiss the appeal and vacate the appellate court decision based upon the defendant's death. As of November 20, 2020, our supreme court has not ruled on the State's motion.

[3] Section 5-130 of the Juvenile Court Act provides the offenses that are excluded from being prosecuted in juvenile court. 705 ILCS 405/5-130 (West 2016).

defendant's conduct would not have been classified as a Class 2 or greater class felony in Illinois. *Id.* The court further noted that section 5-4.5-95(b) of the Code utilized the word "conviction," and based on our supreme court's decision in *Taylor*, a juvenile adjudication would not be considered a felony conviction. *Id.* ¶¶ 15-16 (citing *Taylor*, 221 Ill. 2d at 176).

¶ 38 We agree with *Miles*'s plain language reading of section 5-4.5-95(b) of the Code and find the same result warranted in this case. As noted, when defendant committed delivery of a controlled substance, he was tried in adult court because he was 17 years old and section 5-120 of the Juvenile Court Act only provided for exclusive jurisdiction over offenses committed by individuals under 17 years old with some exceptions not relevant here. 705 ILCS 405/5-120 (West 2002). But because of the amendment to section 5-120 of the Juvenile Court Act in 2013, had defendant committed that same offense as a 17-year-old on September 27, 2017, his case would have been resolved with delinquency proceedings in juvenile court rather than with proceedings in adult court. Consequently, he would have obtained a juvenile adjudication, not a felony conviction, and is therefore ineligible for mandatory Class X sentencing. See 730 ILCS 5/5-4.5-95(b) (West 2016); *Miles*, 2020 IL App (1st) 180736, ¶¶ 15-16 (citing *Taylor*, 221 Ill. 2d at 176).

¶ 39 Although the State acknowledges *Miles*'s holding and concedes that, if followed, it would render defendant ineligible for mandatory Class X sentencing, the State asks us to reconsider the decision. In doing so, the State raises similar arguments that it did in *Miles*, all of which were rejected by this court. And we see no reason to deviate from the well-reasoned decision of *Miles*. We understand the trial court did not have the benefit of *Miles* when it sentenced defendant, but he is nonetheless ineligible for mandatory Class X sentencing, and if he is found guilty upon retrial, he must be sentenced as a Class 2 offender. See *Miles*, 2020 IL App (1st) 180736, ¶ 23.

¶ 40                                   III. CONCLUSION

¶ 41    For the foregoing reasons, we reverse defendant's conviction for possession of a stolen motor vehicle and remand for a new trial.

¶ 42    Reversed and remanded.