# Illinois Official Reports

## Appellate Court

---

### *People v. Grandadam*, 2015 IL App (3d) 150111

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NATHAN GRANDADAM, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0111 |
| Filed | December 2, 2015 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, Nos. 14-TR-6722, 14-TR-6723, 14-TR-6724, 14-TR-6725; the Hon. Daniel J. Bute, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | George Mueller and Karen Donnelly, both of Mueller, Anderson & Associates, of Ottawa, for appellant.<br><br>Brian Towne, State's Attorney, of Ottawa (Robert M. Hansen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Presiding Justice McDade and Justice Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Nathan Grandadam, was convicted of four violations of the Illinois Vehicle Code (Code) (625 ILCS 5/1-100 *et seq.* (West 2014)). Defendant appeals that judgment, contending that the State failed to prove beyond a reasonable doubt that he was operating a motor vehicle, a necessary element of the charged offense. We agree and reverse three of defendant's four convictions outright.

¶ 2                                                        FACTS

¶ 3        The State charged defendant with driving while license revoked (count I) (625 ILCS 5/6-303(a) (West 2014)), operating an uninsured motor vehicle (count II) (625 ILCS 5/7-601(a) (West 2014)), no valid registration (count III) (625 ILCS 5/3-401(a) (West 2014)), and disobeying a traffic control device (count IV) (625 ILCS 5/11-305 (West 2014)). Defendant's bench trial commenced on December 18, 2014.

¶ 4        At trial, Detective Matthew Devries of the Ottawa police department testified that he was on patrol the morning of July 12, 2014. Devries observed defendant riding a "motor-powered bike" on the roadway and noticed that defendant was not pedaling. Devries was able to hear the motor running and could see exhaust coming from the motor. He observed defendant fail to stop at a posted stop sign, then turn left at an intersection at which only right turns were allowed. Devries pulled defendant over.

¶ 5        Once stopped, defendant told Devries that the vehicle could travel between 25 and 30 miles per hour. Later, defendant told Devries' supervisor, Officer Jeff Bangert, that he had once gotten the vehicle to travel at 41 miles per hour, though it was unknown if that speed was reached while going down a hill. Devries estimated that defendant weighed approximately 190 pounds. The State introduced into evidence a copy of defendant's driving abstract, which showed his license was revoked on the day of the incident.

¶ 6        On cross-examination, Devries estimated that defendant was traveling at approximately 15 miles per hour when Devries observed him. Devries did not use a radar gun, and did not pace defendant, but estimated the speed based on past observations and experience with the radar gun. Neither he nor any other officer at the scene tested the vehicle.

¶ 7        Defendant testified that the motor on his bicycle provided three-quarter horsepower. He testified that one must pedal the bicycle up to 8 or 10 miles per hour before activating the motor. He clarified that when pedaling in conjunction with the motor, the bicycle can travel between 25 and 30 miles per hour. However, with "just the engine itself, it won't go more than 17 [miles per hour]." Defendant also explained that on the occasion that he reached 41 miles per hour, as he described to Officer Bangert, the motor was not yet attached to the bicycle. Defendant testified that he weighed 180 or 190 pounds.

¶ 8        On cross-examination, defendant admitted that his license was revoked, that his bicycle was uninsured, and that he did not fully stop at the stop sign. The prosecutor then inquired further into the speeds that defendant's bicycle was capable of reaching:

>         "[Prosecutor]: When you get the vehicle up to 25, 30, 28 miles an hour, you're using the motor, correct?
>
>         [Defendant]: I'm using both. I'm not solely using the motor. The motor itself won't go that fast. It just won't.

[Prosecutor]: But with you on the bike, it can go that fast, correct, with your pedals?

[Defendant]: If you pedal it."

¶ 9    In closing arguments, the State argued that defendant's bicycle was a motor vehicle under the Code: "It has a motor. It's pedal assist. But it does reach speeds in excess of 20 miles an hour, Judge. It takes it outside of the statute for the low-speed, gas bicycle."

¶ 10   The court found that defendant's bicycle was a motor vehicle, explaining: "Your statement at the scene that that vehicle–or that bicycle can go 25 to 28 miles an hour *** is over 20 miles an hour." The court entered convictions on all four counts and sentenced defendant to 240 hours of community service and a fine of $515.

¶ 11                                    ANALYSIS

¶ 12   On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he was operating a motor vehicle as defined in the Code. Specifically, defendant contends that his bicycle falls under the "low-speed gas bicycle" exception in the Code. 625 ILCS 5/1-140.15 (West 2014). We agree that the State failed to prove beyond a reasonable doubt that defendant's motorized bicycle was a motor vehicle under the Code. Thus, we reverse defendant's convictions on counts I, II, and III, as each of those convictions required the operation of a "motor vehicle" as an element. We affirm defendant's conviction on count IV, as the offense of disobeying a traffic control device applied to defendant even if he was not operating a "motor vehicle."

¶ 13   When a challenge is made to the sufficiency of the evidence at trial, we review to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Baskerville*, 2012 IL 111056, ¶ 31; *People v. Collins*, 106 Ill. 2d 237, 261 (1985). In making this determination, we review the evidence in the light most favorable to the prosecution. *Baskerville*, 2012 IL 111056, ¶ 31. All reasonable inferences from the record in favor of the prosecution will be allowed. *People v. Bush*, 214 Ill. 2d 318, 327 (2005). "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Collins*, 106 Ill. 2d at 261.

¶ 14                       I. Driving While License Revoked

¶ 15   The offense of driving while license revoked requires the State to prove, *inter alia*, that a defendant was operating a motor vehicle. 625 ILCS 5/6-303(a) (West 2014). The Code defines motor vehicles as "[e]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, except for vehicles moved solely by human power, motorized wheelchairs, low-speed electric bicycles, and low-speed gas bicycles." 625 ILCS 5/1-146 (West 2014). Low-speed gas bicycles are themselves defined in the Code as "[a] 2 or 3-wheeled device with fully operable pedals and a gasoline motor of less than one horsepower, whose maximum speed on a paved level surface, when powered solely by such a motor while ridden by an operator who weighs 170 pounds, is less than 20 miles per hour." 625 ILCS 5/1-140.15 (West 2014).

¶ 16   It is the burden of the State to prove each element of a criminal offense beyond a reasonable doubt. *People v. Woodrum*, 223 Ill. 2d 286, 308 (2006); *In re Winship*, 397 U.S. 358, 364 (1970). On occasion, a criminal defendant may bear the initial burden of showing that

his conduct falls under an exception to the law. See *People v. Biers*, 41 Ill. App. 3d 576, 582-83 (1976). However, where, as here, "a criminal statute contains an exemption and the legislature has not set forth a provision within the statute allocating the burden of persuasion as to the exemption, we presume that the burden is on the State, not the defendant." *People v. Cannon*, 2015 IL App (3d) 130672, ¶ 21.

¶ 17 In the present case, the State presented no evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that defendant's gas-powered bicycle met the statutory definition of a "motor vehicle." Devries testified that defendant stated the bicycle could travel up to 30 miles per hour. The State and the trial court both reasoned that this was above the statutory limit of 20 miles per hour. However, the statute clearly dictates that the low-speed gas bicycle exception applied when such a bicycle's top speed is less than 20 miles per hour "when powered solely by" motor. 625 ILCS 5/1-140.15 (West 2014). Defendant's statement at the scene apparently did not distinguish between motor-only and pedal-assisted speed, and defendant's unrebutted testimony was that the top speed the bicycle could reach powered by the motor alone was 17 miles per hour. The State presented no evidence to the contrary.

¶ 18 The State on appeal argues that the trial court was free to make inferences from the testimony and thus to infer from defendant's statement at the scene that he was referring to motor-only speed. While a reviewing court will allow all reasonable inferences (*Bush*, 214 Ill. 2d at 326), we need not allow bald assumptions. An inference is "[a] conclusion reached by considering other facts and deducing a logical consequence from them." Black's Law Dictionary 897 (10th ed. 2014). An assumption, on the other hand, is "[a] fact or statement taken as true or correct without definite proof." *Id*. at 149. Here, the only fact related directly to the bicycle's speed without pedaling was defendant's testimony that it could travel at no more than 17 miles per hour. Defendant's more general statement to Devries that his bicycle could travel up to 30 miles per hour was simply not probative of the method by which the bicycle reached those speeds. A reasonable trier of fact could not reasonably deduce from that statement alone that defendant's bicycle could reach such speeds when powered solely by its motor.

¶ 19 The State failed to prove beyond a reasonable doubt that defendant's gas-powered bicycle was a "motor vehicle" as defined in the Code. Accordingly, defendant's conviction on count I, driving while license revoked, is reversed.

¶ 20 II. Operating an Uninsured Motor Vehicle

¶ 21 Section 7-601(a) of the Code provides that no person shall "operate *** a motor vehicle *** unless the motor vehicle is covered by a liability insurance policy." 625 ILCS 5/7-601(a) (West 2014). For the reasons set forth in section I above, we find that defendant was not operating a motor vehicle, as defined by the Code. Accordingly, defendant's conviction on count II, operating an uninsured motor vehicle, is reversed.

¶ 22 III. No Valid Registration

¶ 23 Section 3-401(a) of the Code provides that "[i]t shall be unlawful for any person *** to drive *** upon any highway any vehicle of a type required to be registered hereunder which is not registered." 625 ILCS 5/3-401(a) (West 2014). Section 3-402(A) defines which vehicles

must be registered: "Every motor vehicle, trailer, semitrailer and pole trailer when driven or moved upon a highway shall be subject to the registration and certificate of title provisions of this Chapter ***." 625 ILCS 5/3-402(A) (West 2014).

¶ 24 The State provided no evidence from which a trier of fact could reasonably conclude that defendant's vehicle met the statutory definition of "motor vehicle." Moreover, the State presented no evidence that defendant's gas-powered bicycle was a "trailer, semitrailer [or] pole trailer." *Id*. Accordingly, the State failed to prove beyond a reasonable doubt that defendant's vehicle was required to be registered under the Code. Absent such a requirement, a conviction for no valid registration cannot stand. See 625 ILCS 5/3-401(a) (West 2014). Defendant's conviction on count III, no valid registration, is therefore reversed.

¶ 25                                IV. Disobeying a Traffic Control Device

¶ 26 Chapter 11 of the Code is entitled "Rules of the Road." 625 ILCS 5/11-100 *et seq*. (West 2014). Section 11-305(a) mandates that "[t]he driver of any vehicle shall obey the instructions of any official traffic-control device applicable thereto." 625 ILCS 5/11-305(a) (West 2014). Article XV of chapter 11 governs bicycles and provides that the provisions of article XV that apply to bicycles also apply to low-speed gas-powered bicycles. 625 ILCS 5/11-1516 (West 2014). Article XV also provides that "[t]raffic laws apply to persons riding bicycles." 625 ILCS 5/11-1502 (West 2014).

¶ 27 Officer Devries' unrefuted testimony at trial was that defendant failed to stop at a stop sign and turned left at an intersection where left turns were prohibited. These were each clear violations of section 11-305 of the Code. 625 ILCS 5/11-305(a) (West 2014). As defendant was operating a low-speed gas-powered bicycle at the time of this infraction, he was subject to the same laws as the operator of a bicycle and thus subject to the rules of the road. That defendant's vehicle does not meet the statutory definition of "motor vehicle" has no bearing on his conviction for failure to obey a traffic control device. Accordingly, defendant's conviction on count IV is affirmed.

¶ 28                                                CONCLUSION

¶ 29 The judgment of the circuit court of La Salle County is affirmed in part and reversed in part.

¶ 30 Affirmed in part and reversed in part.