2019 IL App (3d) 180227

Opinion filed October 1, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Whiteside County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| | ) | Appeal No. 3-18-0227 |
| v. | ) | Circuit No. 14-CF-307 |
| | ) | |
| JORDAN A. SCHERER, | ) | Honorable |
| | ) | Stanley B. Steines, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice Schmidt and Justice Holdridge concurred in the judgment and opinion.
_____

**OPINION**

¶ 1     The defendant, Jordan Scherer, appeals from his conviction of resisting or obstructing a peace officer.

¶ 2                                         FACTS

¶ 3     After the defendant damaged a park fence with his vehicle and then ran away from his vehicle, the defendant was charged with criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2014)) and resisting or obstructing a peace officer (*id.* § 31-1(a)).

¶ 4        At the jury trial, Officer Jacob Reul, of the Sterling Police Department, testified that he was parked in a parking lot across the street from the entrance to Sinnissippi Park in Sterling, Illinois, on September 1, 2014. Reul was in full uniform in an unmarked squad car. Reul observed a vehicle come toward the entrance from inside the park at around 11:37 p.m. The gate was closed, and the park had been closed since dusk. Reul observed the vehicle strike the gate, back up, and attempt to go around the gate. It hit something else, backed up, and then went around the gate. Reul exited the parking lot and followed the vehicle up Sinnissippi Park Road, onto Woodlawn Road, and then onto Mineral Springs Road. Reul wanted to stop the vehicle so that he could investigate why the driver damaged the park gate, so he activated his lights while making the turn onto Mineral Springs Road. Reul ran a license plate check and determined that the registered owner of the vehicle was the defendant. Reul testified that it was about a quarter of a mile from Sinnissippi Park Road to the location of the stop. When Reul activated his lights, the video recording system in his car activated, which shows the final few feet of the traffic stop.[1] After the vehicle pulled over, Reul observed the driver's door open, and a male exited the vehicle and immediately ran away. Reul exited his vehicle and ran after the driver. Reul told the driver to get back in his vehicle, but the driver kept running, even after falling down. Reul identified the driver as the defendant. Reul attempted to use his Taser, but one of the prongs hit a tree. After Reul deployed his Taser, he stopped the chase and returned to the vehicle to interview the passenger.

¶ 5        The director of parks and planning of the Sterling Park District, Doug Jacobs, testified that he inspected the gate after September 1, 2014, after he was informed of the damage by the

_____

[1]The video recording of the stop was not contained in the record on appeal.

2

police. Jacobs had the fence taken down and then repaired by a fence company for a total cost of $1271.80.

¶ 6     The defendant testified that he drove into the park after dusk, that the gate was open, and that he drove around with his passenger, who was his friend. The defendant had been in the park at other times at night, including two nights before the incident in question, and the gate was open at night on those occasions. The defendant testified that, as he was leaving the park, his cell phone fell off the console and he accidently hit the gate. The defendant reversed and tried to drive around the gate, but he hit a wooden pylon next to the gate. Neither he nor his passenger was injured, and the airbags did not deploy. The defendant then drove down Sinnissippi Park Road, turned onto Woodlawn Road, and then turned onto Mineral Springs Road and pulled to a stop at the dead end. The defendant testified that, as he was pulling to a stop, he noticed that there was a police vehicle behind him with its emergency lights on. The defendant testified that he was already opening his door to exit his vehicle when he saw the emergency lights and he made the decision to run away because he was "spooked." The defendant does not remember the police officer telling him to get back in his vehicle, but after viewing the video of the stop in court, the defendant was reminded that the officer did tell the defendant to return to his vehicle. The defendant did not return to his vehicle but proceeded to run and continued running even after he fell down. The defendant recalled being hit by the Taser, and he thought he had been shot. The defendant testified that he was not thinking clearly. The defendant called his attorney, and his attorney contacted the police. The defendant turned himself in about two weeks later.

¶ 7     The jury found the defendant guilty of resisting or obstructing a peace officer but not guilty of criminal damage to property. The defendant's posttrial motion was denied, and he was sentenced to 226 days in jail, with credit for time served. The defendant appealed.

¶ 8                                    ANALYSIS

¶ 9        The defendant argues that the evidence was insufficient for the jury to find him guilty of restricting or obstructing a peace officer. The defendant admits that he ran from Reul but argues that was not sufficient because the officer was not making an arrest and did not tell the defendant that he intended to arrest the defendant. The State argues that the evidence was sufficient to sustain the conviction. When a defendant challenges the sufficiency of the evidence, the reviewing court considers " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 10       Section 31-1(a) of the Criminal Code of 2012 (Code) states that "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2014). To sustain a conviction of knowingly resisting or obstructing a peace officer, the State had the burden of proving that: "(1) [the] defendant knowingly obstructed a peace officer; (2) the officer was performing an authorized act in his official capacity; and (3) [the] defendant knew he was a peace officer." *People v. Smith*, 2013 IL App (3d) 110477, ¶ 20. In *Smith*, the defendant was pulled over for speeding in front of his own home. While the officer was writing the ticket, the defendant exited his car to go into his home and ignored the officer's commands to return to the vehicle. *Id.* ¶ 21. This court upheld the defendant's conviction for obstruction under section 31-1(a) of the Code, finding that the defendant knew the officer was a peace officer who was performing an act within his official capacity—writing a

4

speeding ticket—and the defendant's refusal to follow the officer's commands to return to the vehicle was obstructing conduct. *Id.*

¶ 11        In this case, the State proved that Reul was a peace officer, performing an act within his official capacity by following and activating his lights to stop the defendant to investigate damage to the park fence. Reul had blue and red lights on his unmarked police car and was in full police uniform. The defendant admitted that he saw the emergency lights and the officer. While, at the time that the defendant initially started running, the defendant was not under arrest or already involved in a traffic stop, the defendant continued to run after Reul told him to return to his vehicle numerous times. If the defendant did not know that the officer wanted to stop and question him when the defendant initially started running, the defendant definitely acquired that knowledge while he was running away, and the defendant did not stop but continued to run away. At that time, the defendant was knowingly obstructing a peace officer. See *People v. Holdman*, 73 Ill. 2d 213, 222 (1978) ("[f]light *** is definitely a physical act within the purview of this statute"). Thus, the evidence was sufficient to prove the defendant guilty of obstructing a peace officer beyond a reasonable doubt.

¶ 12        The defendant argues that his motion for a directed verdict, and his posttrial motion, should have been granted because the jury could not have found the elements of resisting or obstructing a peace officer beyond a reasonable doubt. As we have already found, the elements were proven beyond a reasonable doubt, so there was no error in the denial of those motions.

¶ 13                                        CONCLUSION

¶ 14        The judgment of the circuit court of Whiteside County is affirmed.

¶ 15        Affirmed.

**No. 3-18-0227**

| | |
|---|---|
| **Cite as:** | *People v. Scherer*, 2019 IL App (3d) 180227 |
| **Decision Under Review:** | Appeal from the Circuit Court of Whiteside County, No. 14-CF-307; the Hon. Stanley B. Steines, Judge, presiding. |
| **Attorneys for Appellant:** | Michael J. Greco, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Terry A. Costello, State's Attorney, of Morrison (Patrick Delfino, Thomas D. Arado, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |