NOTICE
Decision filed 06/01/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240728-U

NO. 5-24-0728

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 19-CF-426 |
| | ) | |
| JUAN C. DUCLERK, | ) | Honorable |
| | ) | Brian L. Bower, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Vaughan and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: We modify the judgment of the trial court where the evidence at trial was insufficient to convict the defendant of aggravated fleeing or attempting to elude a peace officer, but was sufficient for a conviction of the lesser-included offense of knowingly resisting arrest or obstructing a peace officer.

¶ 2    On April 19, 2024, the defendant, Juan C. Duclerk, was convicted of one count of aggravated fleeing or attempting to elude a peace officer in violation of section 11-204.1(a)(4) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-204.1(a)(4) (West 2018)). The defendant was sentenced on May 24, 2024, to three years' incarceration followed by six months of mandatory supervised release. On appeal, the defendant raises the sole issue of whether the State produced sufficient evidence to prove the defendant's guilt beyond a reasonable doubt. For the following reasons, we modify the defendant's conviction and sentence.

1

¶ 3                               I. BACKGROUND

¶ 4     The defendant was charged by information on September 30, 2019, with one count of aggravated fleeing or attempting to elude a peace officer, a Class 4 felony that was extended term eligible. According to the information, on September 27, 2019, the defendant, while operating a motor vehicle, after being given a visual signal to stop by an officer with the Mattoon Police Department, willfully refused to obey the command to stop while also disobeying two or more official traffic control devices. The defendant waived a jury trial, and a bench trial was conducted on April 19, 2024. The defendant failed to appear and was tried *in absentia*.

¶ 5     At trial, the State called two witnesses. The first witness called by the State was Sam Gaines, the Chief of Police for the Mattoon Police Department. Chief Gaines testified that on September 27, 2019, at approximately 3:42 p.m., he was the deputy chief and was patrolling with the then chief of police, Jason Taylor, when he observed the defendant "traveling on a red motorized bike—moped" that was equipped with some kind of engine. Chief Gaines stated that, at the time of the incident, the defendant was approximately "five foot eight" and weighed around 180 pounds.

¶ 6     Chief Gaines stated that they observed the defendant failing to stop at a stop sign, so they activated their vehicle's overhead lights. Chief Gaines testified that the defendant pulled over and stopped; however, once the officers exited their vehicle, the defendant "took off, fled from us, traveling west." Chief Gaines testified that they returned to their vehicle, followed the defendant with their lights and siren activated, and that the defendant proceeded through five stop signs without stopping until he "crashed and then fled on foot."

¶ 7     The second witness called by the State was Officer Tyler Poland, a patrolman with the Mattoon Police Department. Officer Poland testified that on September 27, 2019, he was patrolling

2

in his marked vehicle, in uniform, when he heard on his radio that Chief Gaines was performing a traffic stop on a "red motorbike, operated by [the defendant]." Officer Poland stated that he was familiar with the defendant because Officer Poland had "many traffic stops" and field interviews involving the defendant. Officer Poland testified that when he heard that the defendant was fleeing, he activated his overhead lights and siren and joined the pursuit. Officer Poland stated that he pulled behind Chief Gaines's vehicle, but when the defendant did a U-turn, Officer Poland also did a U-turn and got directly behind the defendant. Officer Poland testified that he advised the defendant, through his intercom, to stop but the defendant continued fleeing until he crashed into a curb. The defendant then fled on foot, but eventually sat down on a ledge in a wooded area where Officer Poland was able to place the defendant into custody. According to Officer Poland's testimony, the defendant had stated that the reason he had fled was because he believed that he had an outstanding warrant for his arrest.

¶ 8    Officer Poland described the motorbike as "a red motorized bike. I believe it had a rack on the front. It was an older-looking bike." The State then produced two photographs of the motorbike, which Officer Poland confirmed depicted the motorbike on which the defendant had fled. The photographs were admitted into evidence. The first photograph showed a red motorbike lying on its side on a curb. The motorbike had pedals, a motor, and a basket on the front. The first photograph did not show the type of motor. The second photograph was of the front portion of the motorbike showing a gas tank, a basket, a cupholder, and a side mirror. The second photograph showed only the front portion of the motorbike and did not show the motor.

¶ 9    The State rested and there was no evidence presented by the defense. During closing arguments, however, the defense argued that the motorbike had pedals and that the State had failed to present any testimony that the motor was engaged during the alleged crime. The defense stated

3

that there was no testimony to establish whether the engine was operational or whether there was even any gas in the tank of the motorbike. The defense went on to argue as follows:

"[T]hat in order for the Defendant to violate this particular statute, he has to be operating a motor vehicle. The State has not proven beyond a reasonable doubt that this is not a low-speed gas bicycle. There has been no testimony as to the speed of flight, any estimated speed of pursuit, or anything of that nature. So, I submit to the Court that this is a low-speed gas bicycle as defined under the Illinois Motor Vehicle Code, 625 ILCS 5/1-146 and 5/11-, I think it's 15, 16. And having said that, if he's not on a motorized vehicle, then he is not guilty of this offense."

¶ 10    The State argued in closing that an engine does not necessarily have to be on or operational to meet the definition of a motor vehicle and stated that Chief Gaines testified that the defendant was on a "motorized bike." Upon completion of the parties' arguments, the trial court found as follows:

"The Court has heard the evidence. The Court would first address the issue of motorized—whether this was a motorized vehicle. Chief Gaines indicated that they had—he and [the other officer]—he—he observed the Defendant operating a motorized bicycle and described the vehicle as that.

Vehicles under the meaning of the Illinois Vehicle Code include devices that are or may be used to transport persons or property on the highways. Motored vehicles are self-propelled, excluding those moved by human power, snowmobiles, and motorized wheelchairs. The testimony of 'motorized vehicle' does fall within the definition of 'motorized vehicle.'

4

As a vehicle under the Code, the only evidence not subject to any rebuttal, any—even any cross-examination—was it was a motorized vehicle. There was no indication or testimony that it was being self-propelled by pedals. The mere existence of pedals does not negate it from its definition of a motorized vehicle. The Court finds the Defendant was driving a motor vehicle as depicted under the statute."

¶ 11    The trial court went on to discuss the remaining testimony presented at trial, and ultimately, found the defendant guilty of the charged offense. The defendant was sentenced, *in absentia*, on May 24, 2024, to three years' incarceration, followed by six months of mandatory supervised release. No posttrial motion was filed. The defendant filed his notice of appeal on June 11, 2024, bringing this matter before our court.

¶ 12                                   II. ANALYSIS

¶ 13    On appeal, the defendant raises the sole issue of whether the State provided sufficient evidence to prove beyond a reasonable doubt that the motorbike operated by the defendant qualified as a motor vehicle, rather than a low-speed gas bicycle or low-speed electric bicycle. The defendant argues that the State presented no evidence regarding the motorbike's engine type, power, or speed capability. The defendant argues that the State did not even present any evidence of the speed of any of the vehicles during the pursuit.

¶ 14    The defendant also asserts that in presenting its findings, the trial court stated that there was no cross-examination or other evidence regarding whether the motorized bicycle qualified as a motor vehicle. The defendant argues, however, that it was not the burden of the defense to do so. The defendant argues that it was the State's burden to prove the essential element that the defendant was the driver or operator of a motor vehicle and the State failed in that burden. Therefore, the

5

defendant argues that there was insufficient evidence to prove him guilty beyond a reasonable doubt of aggravated fleeing or attempting to elude a peace officer.

¶ 15    Before proceeding with our analysis, we note that there was no posttrial motion filed by the defendant. The failure to file a posttrial motion generally subjects an issue to forfeiture. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for review, both a trial objection and a written posttrial motion are required). In *Enoch*, however, our supreme court set out three types of claims that are not subject to forfeiture for failing to file a posttrial motion. *Id.* at 190. Those claims are (1) constitutional issues that were properly raised at trial and may be raised later in a postconviction petition, (2) challenges to the sufficiency of the evidence, and (3) plain error. *Id.* Since this appeal involves the sufficiency of the evidence, we find that this issue has not been forfeited and we will proceed with our analysis on the merits.

¶ 16    This court will only reverse a conviction if, when viewing the evidence in the light most favorable to the State, it concludes that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cunningham*, 212 Ill. 2d 274, 278-79 (2004). In order to find the defendant guilty of aggravated fleeing, the State was required to prove (1) that the defendant was the driver or operator of a motor vehicle; (2) that the defendant was given a visual or audible signal by a police officer directing him or her to bring his or her vehicle to a stop; (3) that the police officer was in uniform and if the officer was driving a vehicle, that the vehicle displayed illuminated, oscillating, rotating, or flashing red or blue lights, which when used in conjunction with an audible horn or siren, would indicate the vehicle to be an official police vehicle; (4) that the defendant willfully failed or refused such signal in order to flee or attempt to elude the officer; and (5) that such fleeing or attempt to elude by the defendant involved disobeying two or more traffic control devices. *People v. Leach*, 2022 IL App (5th) 190362-U, ¶ 35.

6

¶ 17    The Code defines a "motor vehicle" as follows:

"Every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, except for vehicles moved solely by human power, motorized wheelchairs, low-speed electric bicycles, and low-speed gas bicycles." 625 ILCS 5/1-146 (West 2018).

¶ 18    A low-speed electric bicycle is defined as follows:

"A bicycle equipped with fully operable pedals and an electric motor of less than 750 watts that meets the requirements of one of the following classes:

(a) 'Class 1 low-speed electric bicycle' means a low-speed electric bicycle equipped with a motor that provides assistance only when the rider is pedaling and that ceases to provide assistance when the bicycle reaches a speed of 20 miles per hour.

(b) 'Class 2 low-speed electric bicycle' means a low-speed electric bicycle equipped with a motor that may be used exclusively to propel the bicycle and that is not capable of providing assistance when the bicycle reaches a speed of 20 miles per hour.

(c) 'Class 3 low-speed electric bicycle' means a low-speed electric bicycle equipped with a motor that provides assistance only when the rider is pedaling and that ceases to provide assistance when the bicycle reaches a speed of 28 miles per hour.

A 'low-speed electric bicycle' is not a moped or a motor driven cycle." *Id.* § 1-140.10.

7

At the time of the incident, a low-speed gas bicycle was defined as a "2 or 3 wheeled device with fully operable pedals and a gasoline motor of less than one horsepower, whose maximum speed on a paved level surface, when powered solely by such a motor while ridden by an operator who weighs 170 pounds, is less than 20 miles per hour." *Id.* § 1-140.15.

¶ 19 At this point, we note that Chief Gaines's testimony was that the defendant was "on a red motorized bike—moped." A moped is defined in the Code as a motor-driven cycle, with or without optional power derived from manually operated pedals, "whose speed attainable in one mile is at least 20 mph but not greater than 30 mph, and is equipped with a motor that produces 2 brake horsepower or less." *Id.* § 1-148.2. As such, the differences between a low-speed gas bicycle and a moped are the horsepower of the motor and the speed that the motorbike can attain.

¶ 20 The first issue we need to address is whether the State had the burden to prove that the defendant was the driver or operator of a motor vehicle, or whether the burden was on the defendant to prove that he was driving a vehicle that fell within one of the exceptions to a motor vehicle. In *People v. Grandadam*, 2015 IL App (3d) 150111, ¶ 16, the reviewing court stated that where a criminal statute contains an exemption, and the legislature did not set forth a provision within the statute allocating the burden of persuasion as to the exemption, "we presume that the burden is on the State, not the defendant." The Code does not set out a provision allocating the burden of persuasion concerning the exemptions to a motor vehicle. See Illinois Vehicle Code, 625 ILCS 5/1-100, *et seq.* (West 2018). Thus, we start with the presumption that the burden of persuasion is on the State.

¶ 21 Citing *Grandadam*, our supreme court in *People v. Plank*, 2018 IL 122202, ¶ 29, held as follows:

"Once the State has charged someone with violating section 6-303(a) of the Vehicle Code, the prosecutor still has the burden of proving the elements of the crime beyond a reasonable doubt—including that the bicycle that the defendant drove had a strong enough motor to qualify it as a 'motor vehicle.' "

¶ 22 Although the *Plank* court was addressing this issue concerning a defendant charged with driving a motor vehicle on a revoked driver's license, we find it controlling regarding the burden of proof in proving a "motor vehicle" under the Code. As such, we find that the State had the burden of proving all of the elements of the charge of aggravated fleeing beyond a reasonable doubt, including that the motorbike the defendant was driving had a strong enough motor and was capable of attaining the necessary speed to qualify it as a "motor vehicle."

¶ 23 The State had two witnesses who could have established, at the very least, the speed at which they were pursuing the defendant. Although Chief Gaines stated that it was a moped, the State did not make any further inquiry as to the basis of that opinion. Again, whether the motorbike is a moped or low-speed gas bicycle depends upon the horsepower of the motor and the speed it was capable of attaining. Chief Gaines did not testify to either of these elements or to anything else, such as the brand of the motorbike, that could support a determination that the motorbike was a motor vehicle.

¶ 24 The trial court found that Chief Gaines's testimony that it was a "motorized vehicle" fell within the definition of "motorized vehicle." The Code, however, does not contain a definition of a "motorized vehicle." Rather, it contains a definition of a "motor vehicle" and it was the State's burden to prove that the vehicle the defendant was driving at the time of the offense fell within that definition. The trial court also noted the statute's exemptions of vehicles moved by human

9

power, snowmobiles, and motorized wheelchairs, but did not address or acknowledge the exception of low-speed gas or low-speed electric bicycles.

¶ 25    There was no evidence produced by the State to indicate, or to even infer, that the motorbike that the defendant was driving had a certain type of motor and could attain a speed that would establish that it was a "motor vehicle" as defined by the Code. Even viewing the evidence in the light most favorable to the State, we find that no rational trier of fact could have found the essential element that the defendant was driving a motor vehicle beyond a reasonable doubt. Thus, the evidence was insufficient to prove beyond a reasonable doubt that the defendant committed the offense of aggravated fleeing or attempting to elude a police officer. Accordingly, the defendant's conviction must be reversed.

¶ 26    The State asks, in the alternative if we have found reversal necessary, that this court utilize its authority pursuant to Illinois Supreme Court Rule 615(b)(3) (eff. Jan. 1, 1967), to find the defendant guilty of the lesser-included offense of resisting or obstructing a peace officer in violation of section 31-1 of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/31-1 (West 2018)). Under Rule 615(b)(3), this court has the authority to reduce the degree of the offense of which the defendant was convicted when the evidence failed to prove beyond a reasonable doubt an element of the greater offense, even where the lesser-included offense was not charged at trial. *People v. Kennebrew*, 2013 IL 113998, ¶¶ 21-22. A lesser-included offense[1] is one that is "established by proof of the same or less than all of the facts or a less culpable mental state (or both) than that which is required to establish the commission of the offense charged." 720 ILCS 5/2-9(a) (West 2018).

---

[1]We note that the statute states "Included offense" and not "lesser-included offense;" however, it has become a common practice to refer to an included offense as a lesser-included offense.

10

¶ 27    There are three methods for determining whether an offense is a lesser-included offense of another. *Kennebrew*, 2013 IL 113998, ¶ 28. Those methods are (1) the abstract elements approach, (2) the charging instrument approach, and (3) the factual or evidence adduced at trial approach. *Id.* "Where the appellate court convicts a defendant of an uncharged offense through the exercise of its authority under Rule 615(b)(3), the charging instrument approach applies." *People v. Lipscomb*, 2013 IL App (1st) 120530, ¶ 11. Under the charging instrument approach, we examine the charging instrument to determine whether the factual allegations provide a broad foundation or main outline of the lesser offense. *Kennebrew*, 2013 IL 113998, ¶ 30. The failure of the charging instrument to expressly allege all the elements of the lesser offense is not fatal where, to the extent that the lesser offense must have a broad foundation in the instrument charging the greater, the charging instrument sets out the main outline of the lesser offense. *People v. Pedersen*, 195 Ill. App. 3d 121, 129 (1990). If the charging instrument does provide a broad foundation or main outline of the lesser offense, then we will consider whether the evidence at trial rationally supports a conviction on the lesser offense. *People v. Kolton*, 219 Ill. 2d 353, 361 (2006).

¶ 28    Here, the charging instrument stated as follows:

> "The undersigned states to the Court that he is the duly elected, qualified and acting State's Attorney in and for the County of Coles, State of Illinois, and that on or about *September 27, 2019*, at and within the said County of Coles and State of Illinois, committed the offense of *AGGRAVATED FLEEING OR ATTEMPTING TO ELUDE A PEACE OFFICER*, in that said Defendant, while operating a motor vehicle, after given a visual signal to stop by a peace officer by Chief Taylor of the Mattoon Police Department, willfully refused to obey the command to stop and the

11

Defendant's flight or attempt to elude involved the Defendant disobeying two or more traffic control devices.

This act is in violation of *625 ILCS 5/11-204.1(a)(1), a Class 4 Felony, Extended Term Eligible due to prior conviction in Coles County cause 15-CF-350.*"

(Emphases in original).

¶ 29    At the time of the offense, resisting or obstructing a peace officer occurred when a person "knowingly resists or obstructs the performance by one known to the person to be a peace officer ***." 720 ILCS 5/31-1 (West 2018). To sustain a conviction of knowingly resisting or obstructing a peace officer, the State has the burden of proving that: (1) the defendant knowingly obstructed a peace officer, (2) the officer was performing an authorized act in his or her official capacity, and (3) the defendant knew that the individual was a peace officer. *People v. Scherer*, 2019 IL App (3d) 180227, ¶ 10.

¶ 30    Here, the information alleged that the defendant was given a visual signal to stop by a peace officer, Chief Taylor, and willfully failed to obey the command. The information also alleged that the defendant fled and, while fleeing or attempting to elude the peace officer, the defendant continued to disregard the law by disobeying two or more traffic control devices. Thus, we find that the information charging the defendant contained enough factual allegations to provide a broad foundation and/or the main outline of the lesser offense of resisting or obstructing a peace officer since it indicates that the defendant was fleeing or attempting to elude a peace officer.

¶ 31    Next, we find that the evidence at trial was sufficient to prove the defendant guilty of resisting or obstructing a peace officer beyond a reasonable doubt. Chief Gaines testified that he had observed the defendant failing to stop at a stop sign, that they activated their vehicle's overhead lights, and after briefly stopping, the defendant "took off, fled from us." Chief Gaines further

12

testified that they followed the defendant with their lights and siren activated, and that the defendant proceeded through five stop signs without stopping until he "crashed and then fled on foot."

¶ 32   Officer Poland testified that he was in uniform, in a marked vehicle, and that he had previously conducted traffic stops that involved the defendant. Officer Poland also testified that he gave the defendant both visual and verbal instructions to stop and the defendant failed to do so. Officer Poland further testified that even after the defendant crashed his vehicle, he took off running until he was finally taken into custody.

¶ 33   The testimonies of Chief Gaines and Officer Poland established that the defendant knowingly obstructed Chief Gaines and Officer Poland by failing to stop after being directed to do so by the peace officers. The peace officers were conducting a traffic stop after witnessing the defendant failing to stop at a stop sign, and thus, were performing an authorized act within their official capacities. Officer Poland was in full uniform, in a marked vehicle, was previously known to the defendant, and the defendant knew that Officer Poland was a peace officer. Thus, we find that the evidence presented by the State at trial rationally supports a conviction of resisting arrest or obstructing a peace officer.

¶ 34   Under the charging instrument approach, we have found that the offense of resisting or obstructing a peace officer (720 ILCS 5/31-1 (West 2018)), a Class A misdemeanor, is a lesser-included offense of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(1) (West 2018)), a Class 4 felony. We have further found that the evidence at trial rationally supports a conviction on the lesser offense. Accordingly, we elect to utilize our authority pursuant to Rule 615(b)(3), and reverse the defendant's conviction of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(1) (West 2018)), and enter a

13

conviction on the lesser-included offense of resisting or obstructing a peace officer (720 ILCS 5/31-1 (West 2018)), a Class A misdemeanor.

¶ 35     The defendant was extended term eligible and was sentenced to three years' incarceration to be followed by six months of mandatory supervised release on his conviction for aggravated fleeing or attempting to elude a peace officer. The sentencing range for a Class A misdemeanor is imprisonment for less than one year (730 ILCS 5/5-4.5-55 (West 2018)), and a Class A misdemeanor is not subject to extended term eligibility (*id.* § 5/5-5-3.1). Therefore, we further utilize our authority pursuant to Rule 615(b)(4), to reduce the defendant's sentence to a period of eleven (11) months of incarceration with no period of mandatory supervised release. Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967). We further direct the trial court to enter a new mittimus reflecting the decision of this court. See *People v. McNeal*, 405 Ill. App. 3d 647, 681 (2010) (appellate court has authority to order a correction of the mittimus).

¶ 36                                     III. CONCLUSION

¶ 37     For the foregoing reasons, and pursuant to Rule 615(b)(3), (4), we reverse the defendant's conviction for aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(1) (West 2018)), a Class 4 felony, and enter a conviction of the lesser-included offense of resisting or obstructing a peace officer (720 ILCS 5/31-1 (West 2018)), a Class A misdemeanor. We further reduce the defendant's sentence from a period of incarceration of three years with a period of six months mandatory supervised release, to a sentence of eleven (11) months of incarceration with no period of mandatory supervised release.

¶ 38     Affirmed as modified.